UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Hormel Foods Corporation,** | **Civil No. 06-384 (JRT-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Medina & Medina, Inc.,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter came before the undersigned for a hearing on June 22, 2006. Defendant Medina & Medina moves to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue (Doc. No. 2). Larry A. Hanson, Esq., and Thomas L. Nuss, Esq., appeared on behalf of plaintiff Hormel Foods Corporation (Hormel). Thomas A. Gilligan, Jr., Esq., and Nicholas J. O'Connell, Esq., appeared on behalf of defendant Medina & Medina. This motion is assigned to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I.   BACKGROUND

Hormel is a Minnesota-based food manufacturer with multinational operations. (*See* Aff. of G. Ray, Apr. 19, 2006, at 1.) Medina & Medina is a grocery distributor with its principal place of business in Puerto Rico. (Decl. of J. Medina, Feb. 21, 2006, at 1.) Since 1988, Medina & Medina has distributed Hormel products to vendors in Puerto Rico. (Aff. of G. Ray, Apr. 19, 2006, at 1.)

The distribution procedure is as follows. Medina & Medina faxes an order to Hormel at an office in Minnesota. (Decl. of J. Medina, Feb. 21, 2006, at 3.) Hormel estimates that approximately eighty-eight

percent of these orders consist of products manufactured in Minnesota. (Aff. of J. Ciola, Apr. 20, 2006, at 2.) The order, with the exception of some highly perishable items that are flown directly to Puerto Rico, is shipped to an agent of Medina & Medina in Florida. (Aff. of J. Medina, Feb. 21, 2006, at 4; Aff. of R. Stratton, Apr. 19, 2006, at 1.) Medina & Medina then pays Hormel via a post office box in New Jersey. The proceeds are transferred to a lockbox in New York, which is promptly remitted to an account in Minnesota. (Aff. of J. Medina, Feb. 21, 2006, at 4; Aff. of F. Symonds, Apr. 19, 2006, at 2 & Exh. D.)

The record reflects that the president and CEO of Medina & Medina, José "Pepín" Medina (Medina), often contacted Hormel in Minnesota about the distributorship. He came to Minnesota and visited representatives of Hormel in 1992. (Aff. of G. Ray, Apr. 19, 2006, at 1.) Expressing concerns that Hormel distributed its products in Puerto Rico through other companies, Medina sent letters to various officers of Hormel in Minnesota on April 2, 2001; September 5, 2001; November 27, 2001; and February 23, 2002. (*Id.*, Exhs. A, B, C, D.) Hormel evidently decided that Medina & Medina would handle retail distribution while a competitor would handle restaurant distribution. (*See id.*, Exh. E.)

Medina met Gary Ray, an executive vice-president of Hormel, in June 2004 at a trade show in Washington, D.C. At the meeting, Medina complained the transfer of restaurant distribution to a competitor was unjustified, and he added that this competitor was now encroaching into retail distribution. Medina followed up with a letter to Ray, at his office in Minnesota, on June 23, 2004. It threatened litigation over the dispute. (Aff. of G. Ray, Apr. 19, 2006, Exh. E.)

The June 23 letter prompted the parties to engage in protracted negotiations about Medina & Medina's role distributing Hormel products in Puerto Rico. In a letter to Ray on August 25, 2004, Medina

offered two proposals, including one where Medina & Medina would be the exclusive retail distributor of Hormel products. (Aff. of G. Ray, Apr. 19, 2006, Exh. F.)

The principal issue raised by the current litigation is whether the parties subsequently agreed that Medina & Medina would be an exclusive retail distributor for Hormel in Puerto Rico. Although this Court offers no opinion whether such an agreement exists, the parties appear to have engaged in frequent negotiations on this issue in September and October 2004. During these negotiations, Medina sent several letters and faxes to Ray at his office in Minnesota. (Aff. of G. Ray, Apr. 19, 2006, Exhs. G, H, I, J, K, L, M.)

Medina met Ray a second time in June 2005 at a trade show in Minneapolis, again stating that competitors were encroaching into retail distribution. In a follow-up letter to Ray on June 22, 2005, Medina implied that there was an exclusive distributorship, and it demanded that Hormel stop dealing through competing distributors. This dispute escalated in a series of letters, which continued to be directed to Ray at his office in Minnesota, through August 2005. (Aff. of G. Ray, Apr. 19, 2006, Exhs. N, O, P, Q, R.)

The current litigation was evidently precipitated by certain actions of Pueblo Supermarkets (Pueblo), which was a major client of Medina & Medina. Pueblo is involved as a result of a contract between Hormel and Medina & Medina from May 2004. The contract provided that Medina & Medina would distribute Hormel products to Pueblo.

In negotiations leading to this contract, Hormel was represented by Jim Carse, whose office is located in Georgia. During negotiations, Carse met Medina three times in Puerto Rico. Carse and Medina

executed the contract during a fourth meeting in Puerto Rico on May 5, 2004. (Aff. of J. Medina, Feb. 21, 2006, at 2-3.)

In reliance upon its contract with Hormel, Medina & Medina entered a contract with Pueblo. This contract essentially repeated the terms of the contract between Hormel and Medina & Medina, except for some additional terms about payment and delivery. (Aff. of J. Medina, Feb. 21, 2006, Exhs. 1, 2.)

During or after the completion of this contract, Pueblo informed ended its relationship with Medina & Medina and retained Topco Associates (Topco) as its new supplier. Pueblo then asked Topco to supply Hormel products. After learning of these events, Medina sent a letter to Ray on January 18, 2006. Medina stated that, because Medina & Medina had an exclusive distributorship with retail vendors in Puerto Rico, Hormel was not allowed to distribute its products to Pueblo through Topco. (Aff. of G. Ray, Apr. 19, 2006, Exh. T.)

Hormel responded by bringing this action for declaratory judgment. It seeks a declaration that Medina & Medina was not granted an exclusive distributorship with retail vendors in Puerto Rico. Medina & Medina moves to dismiss for lack of personal jurisdiction, contending that it lacks sufficient contacts with Minnesota to be haled into court here. In the alternative, it moves to transfer venue, alleging that Puerto Rico is a more convenient forum for the proceedings.

**II.   DISCUSSION**

    **A.   Personal Jurisdiction**

**1.**

A federal court cannot exercise authority over a nonresident defendant unless it has personal jurisdiction over that defendant. *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d

694, 696 (8th Cir. 1995). To determine personal jurisdiction, a court must examine whether its authority is within the scope of the long-arm statute for the forum state and whether that authority comports with due process. Because Minnesota's long-arm statute permits personal jurisdiction to the extent allowed by due process, only the limits of due process are relevant here. Minn. Stat. § 543.19; *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 614 (8th Cir. 1998).

Due process allows personal jurisdiction in circumstances where the defendant has minimal contacts with the state, such that an action against the defendant will not violate traditional notions of fair play and justice. Minimal contacts are present when, due to the activities of the defendant in the forum state, the defendant may reasonably anticipate being haled into court there. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

On a motion to dismiss for lack of personal jurisdiction, the opposing party has the burden to show prima facie evidence of minimal contacts. *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). When considering whether the opposing party has met this burden, a court considers not only the pleadings, but also the affidavits and exhibits presented for and against the motion. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004).

When examining whether minimal contacts exist, the chief inquiry is whether the defendant has purposefully taken advantage of the benefits or privileges of the law in the forum state. When the defendant's relationship with the forum state results from random or attenuated contacts, no such purposeful availment has taken place. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Two different analyses may be used to determine whether the defendant's contacts with the forum state establish personal jurisdiction. Specific personal jurisdiction occurs when the plaintiff's action

originates from the defendant's contacts with the forum state. General personal jurisdiction occurs when the defendant otherwise has such continuous and systematic contacts to permit personal jurisdiction there. *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003).

Regardless of which analysis is used, five factors are employed to determine whether there are sufficient contacts. These factors are (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the defendant's contacts with the forum state; (3) the relation of the plaintiff's cause of action to the defendant's contacts; (4) the interest of the forum state in providing relief for its residents; and (5) the convenience of the parties. *Stanton v. St. Jude Medical*, 340 F.3d 690, 694 (8th Cir. 2003).

Of the five factors, the first three are accorded greater weight and the remaining two receive less weight. *Stanton*, 340 F.3d at 694. When examining general personal jurisdiction, the absence of the third factor must be overcome by a greater showing of the first two factors. *See Burlington Indus., Inc.*, 97 F.3d at 1102.

**2.**

Arguing minimal contacts are present, Hormel notes its long-standing business relationship with Medina & Medina, and it recites the frequent communications to Minnesota as a result of this relationship. Medina & Medina responds that neither its communications to Minnesota, or its receipt of goods from Minnesota, supply sufficient contacts to establish specific personal jurisdiction.

Communications into a forum state, such as letters and telephone calls, are not sufficient by themselves to establish minimal contacts. *See Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002); *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920 (8th Cir. 1995) (2-1 decision). But frequent communications, when taken together with other actions directed toward the forum state, may help establish

6

minimal contacts. *N.W. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997).

Where a purchaser orders goods from a manufacturer in the forum state, and those goods are shipped from the forum state to the purchaser, the transaction by itself is not sufficient to establish minimal contacts. *Bell Paper Box, Inc.*, 53 F.3d at 923; *Wolf-Tec, Inc. v. Miller's Sausage Co.*, 899 F.2d 727, 728 (8th Cir. 1990) (per curiam); *Scullin Steel Co. v. Nat'l Rwy. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982). But when parties enter a contract that involves more than a passive sale transaction, and one of the parties is located outside the forum state, activities incident to the contract may supply sufficient contacts with the foreign state. Several Eighth Circuit cases illustrate this principle.

In *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, Northwest Airlines retained Astraea Aviation to renovate several aircraft. 111 F.3d 1386, 1389 (8th Cir. 1997). Northwest has its principal place of business in Minnesota, and the negotiations leading to the contract took place there. The actual renovations took place in Texas, but representatives of Astraea frequently traveled to Minnesota, or sent communications there, in connection with the contract. *Id.* Since the parties' contract included a forum selection clause for Minnesota, and since Astraea was actively engaged in activities there, the court found that Astraea had purposefully availed itself of the benefits of that forum. Thus the court held that Astraea had minimal contacts adequate to supply specific personal jurisdiction. *Id.* at 1390.

*Wessels, Arnold & Anderson v. Nat'l Medical Waste, Inc.* involved efforts by National Medical Waste to prepare for a corporate merger. 65 F.3d 1427, 1429-31 (8th Cir. 1995). One of its officers traveled to Minnesota and solicited Wessels to undertake a due diligence review of its accounts. After they reached an agreement, about ninety percent of the review was performed in Minnesota. Aside from several

communications to Minnesota, an officer of National Medical Waste visited Wessels in Minnesota twice in two years. *Id.* at 1432-33. Observing that the officer "actively pursued a business relationship" with Wessels, the court determined that National Medical Waste had more than just random or attenuated contacts with Minnesota. It concluded that these contacts were sufficient for specific personal jurisdiction. *Id.* at 1433.

Solicitation was also an important factor in *Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.* 51 F.3d 1383 (8th Cir. 1995). COPSA, a Spanish corporation, had a twenty-five year history of transactions with a seed company. When that seed company was acquired by Northrup King, COPSA contacted Northrup King about continuing the relationship. Following extensive negotiations between the parties, in which COPSA directed its communications to Minnesota, several officers of COPSA visited Minnesota. COPSA ultimately began ordering seed from Northrup King, and when disputes arose about the quality of the seed, COPSA sent more communications to Northrup King in Minnesota. *Id.* at 1385-86. Because COPSA solicited the transaction and frequently contacted Northrup King in Minnesota, it purposefully availed itself of the benefits of the forum and was subject to specific personal jurisdiction there. *Id.* at 1388-89.

Perhaps closest to the instant case is *St. Jude Medical, Inc. v. Lifecare International, Inc.* 250 F.3d 587 (8th Cir. 2001). Lifecare, a distributor of medical equipment, solicited St. Jude for the right to sell its goods. The parties agreed to the distributorship, and under its terms, St. Jude manufactured its goods in Minnesota and shipped them to Lifecare in California. In the course of this relationship, Lifecare frequently contacted St. Jude in Minnesota, including solicitations to expand the scope of the distributorship. *Id.* at 590.

8

The parties also worked together to sell a large order to a third party in a foreign market. When a dispute arose over this transaction, St. Jude sued, in part seeking a declaratory judgment that the distributorship was terminated. *Id.* at 590-91. The court noted that, when examining specific personal jurisdiction in a contract case, it must consider the parties' negotiations, their course of performance, and their future intentions. *Id.* at 591 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). Because Lifecare frequently contacted Minnesota, both through solicitations and through the distributorship, the court reasoned that Lifecare had availed itself of the benefits of the forum. The court held, therefore, that Lifecare was subject to specific personal jurisdiction in Minnesota. *Id.* at 591-92.

Some general principles may be drawn from these authorities. Where a party in the forum state is solicited by a foreign party, so that the foreign party would benefit from a relationship with a party in the forum state, contacts with the forum state are not random or attenuated. *See Wessels, Arnold & Anderson*, 65 F.3d at 1433; *Northrup King Co.*, 51 F.3d at 1388-89. Once a foreign party pursues business in the forum state, and remains actively engaged in that business with a party in the forum state, the foreign party avails itself of the benefits of the forum state and is subject to specific personal jurisdiction. *St. Jude Medical, Inc.*, 250 F.3d at 291-92; *Northrup King Co.*, 51 F.3d at 1388-89.

**3.**

Medina & Medina has a long-standing business relationship with Hormel. It is not simply a passive purchaser of Hormel products, but instead actively solicited business from Hormel in order to expand its distributorship business. And Medina & Medina, through its president, has frequently contacted Minnesota about this business. It is the nature of the distributorship, rather than the sale and shipping of Hormel products, that is the central dispute in this litigation.

9

Under the circumstances, the contacts between Medina & Medina and Minnesota are neither random or attenuated. Medina & Medina actively pursued business with Hormel in Minnesota, and by doing so, purposefully availed itself of the laws and protections in this forum. Thus Medina & Medina may reasonably anticipate that its relationship with Hormel may lead to being haled into the courts of Minnesota. These contacts are sufficient to establish specific personal jurisdiction. *See St. Jude Medical, Inc.*, 250 F.3d at 591-92. Because specific personal jurisdiction is established, it is not necessary to address the issue of general personal jurisdiction.[1]

In some respects, the arguments of Hormel present a paradox. Its stated goal in this litigation is to show that Medina & Medina was not an exclusive distributor for Hormel. So Hormel, in effect, has the burden to prove this relationship does not exist. But to prove personal jurisdiction, Hormel has produced lengthy correspondence about Medina & Medina's efforts to obtain such an exclusive distributorship. And these solicitations and negotiations are the principal support for a determination of specific personal jurisdiction.

But even if no exclusive distributorship exists, there remains a reasonable basis for specific personal jurisdiction. In solicitations for further business, or in challenges to how Hormel handled their existing

---

[1] If a plaintiff only offers allegations about its contacts with the defendant in the forum state, but does not provide other allegations about the activities of the defendant in that state, the plaintiff fails its burden to show general personal jurisdiction. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994). To establish general personal jurisdiction here, Hormel relies entirely on evidence about its interactions with Medina & Medina in Minnesota. This relationship, by itself, will not supply the sort of continuous and systematic contacts that demonstrate general personal jurisdiction. *See Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (holding that business relationships with two Minnesota residents did not supply general personal jurisdiction).

relationship, Medina often contacted Minnesota and benefitted from the protections of this forum. These purposeful actions are sufficient to support the exercise of personal jurisdiction here.

### B. Transfer of Venue

Medina & Medina alternatively asserts that, if there is personal jurisdiction, it is appropriate for venue to be transferred to the District of Puerto Rico. It argues that most relevant evidence and witnesses are located there, and so it is appropriate to venue the action there. Hormel counters that most of the events related to the distributorship involve its officers in Minnesota.

A district court may, for the convenience of the parties and witnesses and in the interests of justice, transfer venue to any district where the action may have been brought. 28 U.S.C. § 1404(a). Although a motion for transfer of venue is committed to the discretion of the district court, such a motion should not be granted freely. It is presumed that a case should be venued in the current forum, and the moving party has the burden to show that a proposed forum is more convenient. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997); *Graff v. Qwest Communications Corp.*, 33 F.Supp.2d 1117, 1121 (D.Minn. 1999).

Where the proposed forum is more convenient for the moving party, and only serves to shift inconvenience to the nonmoving party, transfer is properly denied. *K-Tel Int'l, Inc. v. Tristar Prods., Inc.*, 169 F.Supp.2d 1033, 1045-46 (D.Minn. 2001). But where the proposed forum provides greater access to witnesses and evidence, particularly when relevant events occurred in the proposed forum, the circumstances are more likely to favor transfer. *Nelson v. Soo Line Rwy. Co.*, 58 F.Supp.2d 1023, 1026 (D.Minn. 1999).

As often noted previously, the principal dispute in this matter is whether the parties agreed that Medina & Medina would be an exclusive distributor for Hormel in Puerto Rico. Many relevant details about this dispute occurred in the context of communications between Minnesota and Puerto Rico. So arguably either forum provides equal access to these matters. But other evidence about the distributorship, especially the parties' course of performance, requires scrutiny of the interaction between Medina & Medina and its competitors in Puerto Rico.

Because Puerto Rico offers substantially greater access to evidence and witnesses, it is a far more suitable forum for this litigation. In the interests of justice, as well as for the convenience of both parties, it is appropriate that venue of this action be transferred to the District of Puerto Rico.

## IV.   CONCLUSION

For the reasons discussed above, this Court concludes that it has personal jurisdiction over the defendant. But in the interests of justice, it is appropriate that venue of this action be transferred to the District of Puerto Rico. This Court recommends, therefore, that Medina & Medina's motion be granted in part and denied in part.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Medina & Medina's motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue (Doc. No. 2) be **GRANTED IN PART AND DENIED IN PART.**

2.	Venue of this matter be transferred to the District of Puerto Rico.

Dated this 25th day of July, 2006.                              s/Jeanne J. Graham

                                                                JEANNE J. GRAHAM
                                                                United States Magistrate Judge

**NOTICE**

Pursuant to D. Minn. LR 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 11, 2006. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit. Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.